# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION


| | | |
|---|---|---|
| Adrian Ayers, | ) | CASE NO. 1:18 CV 2890 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| State of Ohio, et al., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendants. | ) | |


## INTRODUCTION

This matter is before the Court upon Defendants Armond Budish, Sheriff Clifford

Pinkney, and Sergeants Branch and Christopher's Motion to Dismiss (Doc. 12).  This is a §1983

action arising out of Plaintiff's detention in the Cuyahoga County Jail.  For the reasons that

follow, this motion is GRANTED in part and DENIED in part.  Specifically: (1) Part One of

Plaintiff's Amended Complaint ("Complaint") is dismissed; (2) Part Two of Plaintiff's

Complaint will proceed; (3) Defendants' request for qualified immunity is denied; (4) Plaintiff's

*Monell* claims against the Defendants will proceed; (5) Defendants' request for a more definite

statement is denied; and (6) Defendants' request for Plaintiff to be prohibited from filing actions

*in forma pauperis* is denied.

## FACTS

Plaintiff Adrian Ayers filed his *pro se* Complaint against thirteen defendants, including moving defendants ("Defendants") Cuyahoga County Administrator Budish, Cuyahoga County Sheriff Pinkney, Cuyahoga County Corrections Center Sergeant Branch, and Cuyahoga County Corrections Center Sergeant Christopher, in both their individual and official capacities. Only six[1] defendants remain parties[2] to this action. The claims for relief which remain pending are Plaintiff's allegations that defendants Christopher and Pinkney were involved in the censorship of his mail ("Part One") and that defendants Pinkney, Budish, and Branch were involved in the unconstitutional conditions of his confinement ("Part Two").

For purposes of ruling on the pending motion, the facts asserted in the Complaint are presumed to be true.

Plaintiff brings this lawsuit against Defendants, asserting several violations of his constitutional rights during his time spent as a pre-trial detainee in the Cuyahoga County Corrections Center ("Jail"). As set forth in Part One of his Complaint, Plaintiff began to notice

---

[1] By Memorandum of Opinion and Order, this Court dismissed the State of Ohio, Cuyahoga County Prosecutors Michael O'Malley and Fallon Radigan, Ohio Attorney General (now Governor) Michael Dewine, and Cuyahoga County Corrections Center Sergeant Lewis. (Doc. 7). This Court also dismissed any requests for injunctive relief, as Plaintiff is no longer a pretrial detainee at the Jail. This Court later dismissed defendants Cuyahoga Country Corrections Center Mailroom Clerks Wanda Gordan and John Hennessee for want of prosecution. (Doc. 9).

[2] The two remaining defendants which have not moved against Plaintiff's Complaint, defendants Cuyahoga County Regional Director Kenneth Mills and Cuyahoga County Corrections Center Warden Eric Ivey, have not been properly served.

irregularities with his incoming and outgoing mail, including mail being both delayed and undelivered. Plaintiff asked mailroom clerk John Hennessee regarding the issues with his mail and Hennessee informed him it was possible that his mail was being "flagged" by the Cuyahoga County Prosecutor's office.

Plaintiff submitted three "Requests to Staff," as well as a letters to Judge Nancy M. Russo, Administrative Judge John Russo, and defendants Ivey and Pinkney concerning his mail. This correspondence did not elicit any response.

Plaintiff has "obtained over 25 letters that had been seized," including a copy of a letter he sent to his girlfriend from his attorney. He never received a letter concerning the foreclosure of his home and subsequently lost his opportunity to challenge the foreclosure. His family is now facing eviction. Plaintiff has ascertained the "sole purpose of searching and seizing [his] mail was to bolster the criminal case the state has pending against" him.

As set forth in Part Two of his Complaint, Plaintiff submits his constitutional rights have been violated due to various conditions present in the Jail. These conditions include:[3]

1. Being subject to an unwritten "Red Zone" lockdown policy, which was implemented by defendants Pinkney, Mills, and Ivey, whereby Plaintiff was confined to his cell for as long as 27 hours "without access to recreation, showers or ability to call" an attorney.

2. Being taken to a filthy, overcrowded, and insufficiently ventilated "holding cell" on days he was waiting to be called to court. Plaintiff has been kept in one of these cells for up to 5 hours without water, and the

---

[3] Plaintiff also asserted his right of access to the court was violated because he was afforded inadequate access to the legal research computer and was temporarily removed from the inmate legal research access list. By Memorandum of Opinion and Order, this Court dismissed the claim because Plaintiff did not allege facts plausibly suggesting he suffered prejudice in connection with his access to the Jail's legal research computer.

wait time in these cells range from one and a half hours to 7 hours.

3. Insufficient privacy in the visiting room of the Jail where inmates are to meet their attorneys, with only two private visiting rooms being available. Plaintiff refused to meet his attorney in the visiting room on one occasion because his "conversation was not private."

4. Inadequate opportunity for exercise. Since the implementation of the "Red Zone" policy, Plaintiff has been offered the opportunity to go to recreation only approximately twice a month.

5. Being served an "inadequate amount of food," the Kosher meals he is being served are cold, and the trays the "food [is] served on" are foul-smelling.[4]

6. Being subject to several other "inhumane conditions," including insufficient lighting and heat, clogged vents, inadequate places to eat and write, and an insufficient internal grievance process.

This matter is now before the Court upon Defendants' Motion to Dismiss. Defendants move to dismiss the Complaint on several grounds. They maintain this action should be dismissed under Fed. R. Civ. P. 12(b)(5) because Plaintiff failed to timely serve Defendants, pursuant to Fed. R. Civ. P. 4(m). Defendants further contend that Plaintiff fails to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also, in the alternative, request the Plaintiff provide a more definite statement, pursuant to Fed. R. Civ. P. 12(e).[5] Plaintiff opposes the motion in its entirety.

As the Defendants are moving against Plaintiff's Complaint under separate provisions in

---

[4]  In connection with this claim, Plaintiff refers to a November 2018 U.S. Marshal's report, finding that vermin infested the carts in the Jail where the food trays are stored.

[5]  Defendants briefly reference Fed. R. Civ. P. 12(c), i.e., judgment on the pleadings. However, as Defendants have not filed an answer, the Court analyzes the motion under Fed. R. Civ. P. 12(b)(6).

4

the Federal Rules of Civil Procedures, the Court will consider the arguments as to each provision individually, below.

## I.    **FED. R. CIV. P. 12(b)(6)**

### A.    **STANDARD OF REVIEW**

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*)*,* 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Fingers v. Jackson-Madison County General Hospital District,* 101 F.3d 702 (6th Cir. Nov. 21, 1996), *unpublished*. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Id*. at 1949 (citations and quotations omitted). *See also, Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir.2009).

**B**.  **ANALYSIS**

**1.  Part One of Complaint: Plaintiff's Mail**

Defendants[6] argue that Part One of the Plaintiff's Complaint, i.e. his claims related to his mail, must be dismissed because none of the intercepted mail was marked as legal mail. According to Defendants, the claim fails because it is lawful for Plaintiff's mail to be "intercepted and reviewed while in jail."  Plaintiff asserts he is not arguing whether "his mail was marked as 'legal mail,'" but rather "whether his mail was illegally censored, withheld, and sometimes undelivered," in violation of his constitutional rights.

Although inmates do retain the right under the First Amendment to receive mail, that right is more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001).  Indeed, some rights, particularly those found in the First Amendment, are simply inconsistent with the status of a prisoner.  *Id.* at 229; *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Turner v. Safley,* 482 U.S. 78, 84–85 (1987).  A prison regulation, even if it impinges on a prisoner's constitutional rights, will be upheld as long as it is reasonably related to a legitimate penological interest.  *Turner,* 482 U.S. at 89; *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.1992).

---

[6]     Although all Defendants moved for the dismissal of Part One of Plaintiff's Complaint, this portion of the Complaint only contains allegations against moving defendants Pinkney and Christopher.  Therefore, as it relates to Part One of the Complaint, Defendants only include defendants Pinkney and Christopher.

When considering actions or policies that involve inmate mail, a distinction is drawn between legal mail and non-legal mail. Legal mail is given much greater protection from unreasonable intrusion. *See e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir.1996). Prison officials do not have unfettered discretion to open and read an inmate's legal mail, because this correspondence relates to the attorney-client privilege and the prisoner's right of access to the courts. *See Kensu*, 87 F.3d at 174. Thus, legal mail can only be opened and inspected by prison officials in the prisoner's presence. *Id.*

Conversely, prison officials are permitted to open, inspect for contraband, and read a prisoner's incoming non-legal mail provided that the inspection is pursuant to a policy to maintain prison security. *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir.2003); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.1993). Opening and inspecting an inmate's non-legal correspondence aids prison authorities in preventing escape plans, inflammatory materials, or other contraband from getting to prisoners. *See Turner*, 482 U.S. at 92; *Post v. Mohr*, 2012 WL 76894, at *12 (N.D. Ohio Jan. 10, 2012).

Upon review, the Court agrees with Defendants. The Court acknowledges it initially allowed Plaintiff to proceed on his mail-related claims because a liberal construction of the Complaint suggested he was possibly claiming undue interference with his *legal* mail. However, Plaintiff has now conceded he is not raising claims regarding his legal mail, instead focusing on the delivery issues and censorship of his mail. However, "no constitutional provision flatly prohibits as unlawful censorship a prison from opening and reading a prisoner's mail unless it can be shown that the conduct interferes with the prisoner's right to counsel or access to the courts or violates his rights of equal protection or procedural due process." *Stanley v. Vining*,

7

602 F.3d 767, 771 (6th Cir. 2010).

Plaintiff has not shown the opening and reading of his non-legal mail has interfered with his right to counsel, access to the courts, or his constitutional rights. He complains about the non-delivery of mail from "family and friends," correspondence pertaining to his "personal business affairs," and his son's birthday cards. While frustrating, this does not rise to the level of a constitutional violation. *See Jackson v. Williams*, 2011 WL 6326123, at *2 (N.D. Ohio Dec. 16, 2011)("Mail that is non-legal in character may be opened, inspected, and read by prison officials provided that the inspection is conducted pursuant to a policy to maintain prison security."). Similarly, Plaintiff alleges a letter he sent to his girlfriend was seized by Defendants, but this does not implicate his constitutional rights. *See Post*, 2012 WL 76894, at *12 (finding the confiscation and reading of letters from an inmate's girlfriend to not be a violation of constitutionally-protected rights). Moreover, while Plaintiff's mail regarding his foreclosure proceedings could arguably be construed as legal mail, Plaintiff has not alleged in his Complaint that Defendants read, opened, or "seized" this mail, as he has with the letter to his girlfriend. The only allegation he raises is that this piece of mail was undelivered. *See Rowser v. Ohio*, 2013 WL 123784, at *15 (N.D. Ohio Jan. 9, 2013)(finding an isolated incident of inadvertent mail interference does not state a claim that rises to the level of a constitutional violation). Thus, he has not plead facts which give rise to a constitutional violation.

Accordingly, the Court GRANTS this portion of Defendants' Motion and DISMISSES

Part One[7] of Plaintiff's Complaint.[8]

### 2. Part Two of Complaint: Conditions of Confinement

Defendants argue Plaintiff's conditions of confinement claims should also be dismissed because "Plaintiff has not adequately alleged that he suffered anything more than ordinary discomfort." (Doc. 12 at 13). Defendants also contend the Jail's lock down practices do not rise to the level of a constitutional violation. According to Plaintiff, he has established Defendants "deprived him of a minimal civilized measures of life's necessities; and that the Defendants were deliberately indifferent to such deprivation." (Doc. 15 at 7). Plaintiff maintains the Jail's lock down practices created conditions which resulted in constitutional violations.

The Eighth Amendment protects inmates by requiring that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The Eighth Amendment's protections, however, apply specifically to post-conviction inmates, *see Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992). The Due Process Clause of the Fourteenth Amendment extends those same protections to pretrial detainees. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994). Although they are based on violations of the Fourteenth Amendment, the claims of pretrial detainees are analyzed under the same rubric as Eighth

---

[7]     Defendants also raise arguments under the *Rooker-Feldman* Doctrine with respect to Plaintiff's mail claims. Since the Court is dismissing these claims, it need not address these additional arguments.

[8]     The only claims remaining against defendant Christopher were contained in Part One of Plaintiff's Complaint.

Amendment claims brought by prisoners.  *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), sets forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  *Id.*  Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  Routine discomforts of prison life do not suffice.  *Id.*  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.  *Id.* at 9.  A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.*  Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence.  *Id.*  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

     a.  *"Red Zone" policy/Lock down*

Plaintiff alleges the Jail has implemented a "Red Zone" lockdown policy, by which inmates "are confined to their cells for as long [as] 27 hours without access to recreation, showers or ability to call their attorneys."  (Doc. 5 at 6).  Plaintiff contends this policy is a result of staff shortages and has created a very "hostile and explosive environment."  (*Id.*)  He further alleges this "Red Zone" policy has resulted in minimal opportunities for recreation, totaling "approximately two times a month."  (*Id.* at 8).  Defendants assert this lockdown practice does

not rise to the level of a constitutional violation.

The Sixth Circuit has found that long periods of confinement or lockdown do not automatically result in an Eighth Amendment violation. *Argue v. Hofmeyer*, 80 Fed App'x 427, 429 (6th Cir. 2003)("Argue's confinement to his cell for twenty-three hours per day, Monday through Friday, does not rise to the level of a constitutional magnitude, because the confinement does not impose an atypical and significant hardship."). Indeed, "merely being placed in administrative lockdown, even for 23 hours a day, does not rise to the level of a constitutional violation." *Quinn v. C.I.A.*, 2013 WL 594240, at *4 (W.D. Ky. Feb. 15, 2013). *See also Burnett v. Wilson*, 2007 WL 437921, at *2 (N.D. Ohio Feb 7, 2007) (concluding confinement to an infirmary cell for 23 hours per day for 35 days did not violate the Eighth Amendment). However, while an extended lockdown policy may not, in and of itself, automatically establish a violation of a prisoner's Eighth Amendment rights, the deprivations which occur as a result of such a policy may. *See Francis v. Altiere*, 491 Fed App'x 539, 543 (6th Cir. 2012)("[W]hile it is appropriate to consider asserted deprivations individually and in combination, the court should also consider the interrelationship between the severe conditions and their duration, coupled with any other relevant evidence in the record."). The Sixth Circuit has not hesitated to remand cases where a district court fails to "consider the combined negative impact" of various Eighth Amendment claims. *Peoples v. Bauman*, 2017 WL 7050280, at *5 (6th Cir. 2017).

Relevant to here, the Sixth Circuit has recognized that "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees. Inmates require regular exercise to maintain reasonably good physical and psychological health." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *see also*

11

*Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). While the Sixth Circuit has never set a minimum amount of recreation time an inmate must have access to, the court has found extreme limitations on recreation and exercise may rise to the level of a constitutional violation. *See Rodgers v. Jabe*, 43 F.3d 1082, 1086–87 (6th Cir.1995) (no minimum amount of outdoor exercise required to avoid Eighth Amendment violation).

Defendants make no argument[9] regarding Plaintiff's purported lack of recreation and exercise due to the implementation of the "Red Zone" policy. Rather, Defendants cite to a recent case from the Northern District of Ohio, *Barganier v. Pinkney*, 2018 WL 2336802 (N.D. Ohio May 23, 2018), which dismissed a *pro se* Plaintiff's claims that the Jail's "Red Zone" policy constituted cruel and unusual punishment in violation of the Eighth Amendment. *Bargainier*, 2018 WL 2336802 at *1-2.

Despite Defendants' suggestion otherwise, *Bargainer* does not stand for the proposition that the Jail's "Red Zone" policy cannot, under any circumstances, violate the Eighth Amendment. Indeed, *Bargainer* is distinguishable for several reasons. The plaintiff in *Bargainer* alleged he was placed in the "Red Zone" for 9.5 hours a day, rather than the 27 hours alleged by Plaintiff. *Id.* at *1. Moreover, the complaint in *Bargainer* did not present any specific allegations of an extreme deprivation of exercise or recreation as a result of the "Red

---

[9]    Defendants also do not reference or make any argument with respect to Plaintiff's allegations regarding the holding cells, the lack of privacy in the visiting rooms, the Jail's lighting, ventilation, or lack of a place to eat or write. The Court declines to *sua sponte* fashion arguments as to these claims, especially in light of the fact Plaintiff's Complaint has already survived the screening process under 28 U.S.C. §§ 1915A and 1915(e). *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

12

Zone" policy. *See Bargainer*, Case No. 1:18 CV 223, Doc. No. 1. Here, Plaintiff has linked the "Red Zone" policy to a substantial limit on his exercise and recreation time. Plaintiff's allegations, if accepted as true, could state a plausible claim for relief.

Accordingly, Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants. The Court DENIES this portion of Defendants' Motion to Dismiss.

### b. Food Service

Plaintiff raises various allegations regarding the food service at the Jail. In addition to complaining about temperature and quantity of the food, Plaintiff asserts the food service trays have a "revolting smell." Plaintiff attributes this smell to "dead rodents, mouse droppings, maggots, and insects" contained within the carts the food service trays are stored in.

Beyond placing the word "food" in a heading,[10] Defendants make no substantive argument regarding these allegations. Defendants summarily assert Plaintiff "has not adequately alleged that he suffered anything more than ordinary discomfort."

The Eighth Amendment requires an inmate's food to be adequate to meet an inmate's essential nutritional needs. *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977); *see also Clark–Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006). Moreover, while "isolated exposure to foreign bodies in food, including those of rodents and insects, does not constitute an Eighth Amendment violation," being subject to such conditions for weeks or months could rise to the level of a constitutional violation. *See Balcar v. Smith*, 2017 WL 3613479, at *2 (6th Cir. 2017). *See also Lamb v. Howe*, 677 Fed. App'x 204, 209 (6th Cir. 2017)("Conditions-of-

---

[10] Within this same heading, Defendants also reference "bugs, cold, and mold in the shower." However, a careful review of the Complaint does not reveal any allegations regarding the conditions of the showers in the jail.

confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount.").

Plaintiff has alleged he was provided with an "inadequate amount of food" and endured a "revolting smell" from his food trays for several months while in the Jail.  Plaintiff has plead facts that, if true, may establish that a sufficiently serious deprivation has occurred.

Defendants argue Plaintiff has not set forth "any evidence to indicate [they] were deliberately indifferent."  The Court disagrees.  "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety.'"  *Bishop v. Hackel,* 636 F.3d 757, 766-767 (6th Cir. 2011)(quoting *Farmer v. Brennan*, 511 U.S. 825, 828-829 (1994)).  If the facts in the Complaint are accepted as true, a reasonable prison official would have understood providing food to inmates which is housed in the same cart as "dead rodents, mouse droppings, maggots and insects" could pose a risk to an inmate's health and safety. Moreover, Plaintiff specifically alleges the moving Defendants acted with deliberate indifference with respect to the inhumane conditions and the food service in the Jail.

Accordingly, at this stage of the proceedings, the Court concludes that Plaintiff has sufficiently alleged an Eighth Amendment claim against Defendants with respect to his food service.  The Court DENIES this portion of Defendants' Motion to Dismiss

### 3.     **Defendants' Assertion of Qualified Immunity**

 Defendants have raised qualified immunity as a defense.  They assert Plaintiff has "failed to properly allege that any of his constitutional rights have been violated."

"[Q]ualified immunity shields officials from civil liability if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). To survive a motion to dismiss on qualified immunity grounds, the complaint must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The complaint must also allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)(internal citations and quotation marks omitted). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne*, 655 F.3d at 562–63.

The Sixth Circuit has recognized that while "insubstantial claims against government officials should be resolved as early in the litigation as possible," "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)(internal citations omitted). Indeed, the Sixth Circuit has held "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-434 (6th Cir. 2015)(internal citations omitted).

The Court has already concluded that Plaintiff has plausibly alleged the individual defendants violated his rights under the Eighth Amendment regarding the food service and the deprivations stemming from the "Red Zone" policy.

15

Having determined that Plaintiff has sufficiently alleged a clearly established right was violated, the Court next considers if Plaintiff has properly alleged that each of the moving Defendants personally violated those rights. *See Johnson*, 790 F.3d at 653 ("[T]he allegations must demonstrate that each defendant officer, through his or her own individual actions, personally violated plaintiff's rights under clearly established law")(internal citations omitted).

The Court finds Plaintiff has sufficiently alleged that Pinkney, Budish, and Branch personally violated his rights. Taking all of Plaintiff's factual allegations as true and drawing all inferences in his favor, the Complaint specifically asserts each of these defendants were personally involved in the conditions of his confinement in the Jail. Thus, dismissal of the individual capacity claims against Pinkney, Budish, and Branch, based on qualified immunity, is improper at this stage in the proceedings.

Accordingly, the Court DENIES this portion of Defendants' Motion to Dismiss.

### 4. **Defendants' Arguments[11] Regarding *Monell***

Plaintiff has also brought claims against moving Defendants Pinkney, Budish, and Branch in their official capacities. Defendants argue these claims should be dismissed because Plaintiff has "failed to adequately allege a custom or policy." Plaintiff asserts he has "set forth facts that the Defendant's unwritten 'Red Zone' policy was the 'moving force' behind many of" his claims.

An official capacity claim is treated as a claim against a municipality. *Essex v. County of Livingston*, 518 Fed. App'x 351 (6th Cir.2013). *See Cady v. Arenac Cnty.*, 574 F.3d 334, 342

---

[11]    Defendants also argue Plaintiff's access to the courts claim and requests for injunctive relief should be dismissed. By Memorandum of Opinion and Order, this Court has already dismissed both claims.

(6th Cir.2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent.").  A plaintiff may bring a claim under 42 U.S.C. § 1983 for a deprivation "of any rights, privileges, or immunities secured by the Constitution and laws" as a result "of any statute, ordinance, regulation, custom, or usage, of any State."  42 U.S.C. § 1983; *Doe v. Claiborne*, 103 F.3d 495, 505 (6th Cir.1996).  However, a municipality cannot be found liable for deprivation of a constitutional right unless a plaintiff can establish that an officially executed policy or the toleration of a custom within the municipality deprived the plaintiff of that right.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  A "custom" must be "so permanent and well-settled as to constitute a custom or usage with the force of law" such that it is a "deeply embedded traditional way[ ] of carrying out state policy."  *Monell*, 436 U.S. at 691; *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 269 (1940).

Therefore, for a *Monell* claim to survive a motion to dismiss, a plaintiff must adequately allege "(1) that a violation of a federal right took place, (2) that the defendants acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County, Ohio*, 753 F.3d 639, 660 (6th Cir. 2014)(citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir.2008)).

The Court finds that Plaintiff has alleged enough in his Complaint for his *Monell* claims to survive at this juncture.  Indeed, Plaintiff has alleged that Defendant Pinkney has instituted an unwritten "Red Zone" policy in the Jail, in which inmates are kept in their cells for up to 27 hours at a time due to staffing shortages.  Construing the Complaint broadly in Plaintiff's favor, and taking all allegations as true, Plaintiff has connected this "Red Zone" policy to various

constitutional violations, including a drastically limited ability to exercise or participate in recreation.

Moreover, Plaintiff has raised various allegations regarding the conditions of his confinement in the Jail, including the food service. The Complaint alleges both Defendants Budish and Branch were made aware of the deficiencies of the food service in the Jail, but failed to act after being informed of these issues. Although the Complaint does not point to any specific policy with respect to the Jail's food service, the alleged deficiencies in the food service can easily be attributed to the County, which is the entity with authority to institute polices with respect to food service. *See Fluker v. Cuyahoga County*, 2019 WL 3718619, at *4 (N.D. Ohio Aug. 7, 2019)(citing *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). While Plaintiff must ultimately prove his allegations, accepting them as true, the Court can reasonably infer the existence of a policy sufficient for Plaintiff's *Monell* claims to survive at this stage.

Accordingly, dismissal of the *Monell* claims[12] is not appropriate. The Court DENIES this portion of Defendants' Motion to Dismiss.

## II.     FED. R. CIV. P. 12(b)(5); 4(m)

### A.     STANDARD OF REVIEW

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *O.J. Distrib., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir.2003). Fed. R. Civ. P. 12(b)(5) allows for parties to move for the dismissal of

---

[12]     Defendants have also asserted Plaintiff's "failure to train" claims should be dismissed. However, Plaintiff only alleged failure to train against defendant DeWine, who has been dismissed.

18

claims due to insufficient service of process, while Fed. R. Civ. P. 4 sets forth the requirements

for sufficiency of process.  *See* Fed. R. Civ. P. 4; 12(b)(5).  Fed. R. Civ. P. 4(m) provides, in

relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the
> court—on motion or on its own after notice to the plaintiff—must dismiss the
> action without prejudice against that defendant or order that service be made
> within a specified time. But if the plaintiff shows good cause for the failure, the
> court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Thus, absent a showing of good cause to justify the failure to obtain timely

service, Fed. R. Civ. P. 4(m) and 12(b)(5) compel dismissal.  *Habib v. General Motors Corp.*, 15

F.3d 72, 73 (6th Cir.1994).

However, prisoners proceeding *in forma pauperis* create a unique set of circumstances

for purposes of Fed. R. Civ. P. 4(m).  Indeed, the Sixth Circuit has recognized:

> The plaintiff generally bears responsibility for appointing an appropriate person
> to serve a copy of his complaint and the summons upon a defendant.
> Fed.R.Civ.P. 4(c)(1). The appointed person is usually a commercial process
> server plaintiff has contracted with to effectuate service for a fee. In the case of
> a plaintiff proceeding *in forma pauperis*, however, the assumption is that,
> because the plaintiff cannot pay fees and costs, it is likely the plaintiff cannot
> afford to hire a process server. *Welch v. Folsom*, 925 F.2d 666, 668 (3d
> Cir.1991). For this reason, 28 U.S.C. § 1915(c) provides that the officers of the
> court "shall issue and serve all process" when a plaintiff is proceeding *in forma
> pauperis*. Fed.R.Civ.P. 4(c)(2) dovetails with § 1915(c) by providing that the
> court must appoint a United States Marshal to serve plaintiff's process "when
> the plaintiff is authorized to proceed *in forma pauperis* pursuant to 28 U.S.C. §
> 1915." Together, Rule 4(c)(2) and 28 U.S.C. § 1915(c) stand for the proposition
> that when a plaintiff is proceeding *in forma pauperis* the court is obligated to
> issue plaintiff's process to a United States Marshal who must in turn effectuate
> service upon the defendants, thereby relieving a plaintiff of the burden to serve
> process once reasonable steps have been taken to identify for the court the
> defendants named in the complaint. *See Graham v. Satkoski*, 51 F.3d 710, 712
> (7th Cir.1995) ("The Marshals Service is required to serve process on behalf of
> individuals proceeding in forma pauperis."); *see also Mallard v. United States
> Dist. Court for the Southern Dist. of Iowa*, 490 U.S. 296, 302, 109 S.Ct. 1814,
> 1818–19, 104 L.Ed.2d 318 (1989) ("Congress evidently knew how to require

service when it deemed compulsory service appropriate.").

*Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996).

B.    <u>**ANALYSIS**</u>

Defendants argue the Complaint must be dismissed because Plaintiff did not timely serve

them within the 90-day time frame provided for under Fed. R. Civ. P. 4(m).

When a plaintiff is proceeding *in forma pauperis*, federal district courts are required,

under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to screen the complaint and dismiss any portion of

it that the court finds frivolous, malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28

U.S.C. §§ 1915(e)(2)(B) and 1915A; *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). Such a

screening process occurs prior to service. Once a complaint has been permitted to proceed, it is

the United States Marshal Service "who must in turn effectuate service upon the defendants,

thereby relieving a plaintiff of the burden to serve process once reasonable steps have been taken

to identify for the court the defendants named in the complaint." *Byrd*, 94 F.3d at 219.

Defendants have misconstrued Fed. R. Civ. P. 4(m) and relevant statutory authority with

respect to service for plaintiffs proceeding *in forma pauperis*. Defendants appear to have

improperly assumed that either the date Plaintiff initiated this lawsuit (i.e., December 17, 2018),

or the date the Amended Complaint[13] was filed (i.e., February 11, 2019) is the appropriate date

for calculating when service was to be completed. This is incorrect. This Court did not

---

[13]    Defendants also incorrectly state Plaintiff "never filed a motion for leave" prior to
the filing of this Amended Complaint. A review of the docket confirms Plaintiff
filed a Motion for Leave to Amend on January 2, 2019, which was subsequently
granted by this Court on May 21, 2019. Moreover, even if Plaintiff has not filed
such a Motion, he was permitted to amend his complaint as a matter of course
under Fed. R. Civ. P. 15(a)(1)(A).

complete its screening process under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A until May 21, 2019.

It was not until then this action was permitted to proceed against Defendants. Thus, Plaintiff

could not have even attempted to properly serve Defendants until after this date.

This Court directed Plaintiff to "provide completed U.S. Marshal forms and summonses

sufficient to initiate service on the defendants remaining in the case within thirty (30) days of the

date of this Order. Plaintiff complied with this Order by providing a copy of his Complaint,

along with completed summonses and U.S. Marshal forms for six of the remaining defendants.

The U.S. Marshal Service promptly executed service on the four moving Defendants on June 27,

2019. Accordingly, the requirements for service of process by a plaintiff proceeding *in forma*

*pauperis* have been met and Defendants' arguments[14] regarding dismissal under Fed. R. Civ. P.

12(b)(5) are not well-taken. This portion of Defendants' Motion to Dismiss is DENIED.

## III.     FED. R. CIV. P. 12(e)

In the alternative to dismissal of the action, Defendants move for a more definite

statement, pursuant to Fed. R. Civ. P. 12(e). Plaintiff opposes the motion.

### A.        STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(e) provides:

(e) Motion for More Definite Statement. A party may move for a more definite

---

[14]      Defendants also briefly raise the argument that Plaintiff has filed a second amended complaint, which he "never sought and obtained leave to file." (Doc. 12). The Court rejects this argument. Defendants appear to be referring to the fact that Plaintiff re-filed his first Amended Complaint on June 24, 2019, along with the completed U.S. Marshal forms and summonses, in compliance with this Court's order. Despite Defendants' contention this Amended Complaint is the "latest iteration of his claims in this case," a careful review of this document reveals this is the same document as Plaintiff's Amended Complaint. The only change is Plaintiff has updated his address to the Richland County Correctional Institution.

statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Courts in this district have recognized the hurdle in granting such a motion:

A complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to satisfy the pleading requirements a claimant need only give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Moreover, courts disfavor motions for more definite statements. *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 989 (N.D. Ohio 1984). A motion for a more definite statement should not be used as a substitute for discovery. *Id.* Hence, a motion for more definite statement "is designed to strike at unintelligibility rather than simple want of detail . . . . [It] must be denied where the subject complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill any possible gaps in detail." *Scarbrough v. R-Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D.Wis.1985).

*Schwable v. Coates*, 2005 WL 2002360, *1 (N.D. Ohio Aug. 18, 2005). *See also Sky Technologies Partners, LLC v. Midwest Research Institute*, 125 F. Supp. 2d 286, 298 (S.D. Ohio 2000) ("A motion for more definite statement is granted only when the pleading is so vague that it is unreasonable to expect that a responsive pleading may or can be framed."); *Charles v. N.G.T. Corporation*, 2017 WL 119478, at *2 (W.D. Ky. Jan 11, 2017)("cases in which motions for more definite statements are granted are a rarity.").

**B.      ANALYSIS**

Defendants argue they require a more definite statement of the claims against them because the Complaint is "loosely written in a narrative fashion, does not name the correct party

22

defendants and does not clearly identify the basics" of Plaintiff's claims. They contend the Complaint "does not make logical sense" and "lacks a coherent theory."

The Court finds that the Complaint is not vague or ambiguous. It is 14 pages long, with 158 separate paragraphs, containing numerous factual allegations, detailing Plaintiff's experience while he was incarcerated in the Jail. Plaintiff has sufficiently offered notice to Defendants as to the alleged causes of action related to his time in the Jail.

Accordingly, the Court DENIES Defendants' motion for a more definite statement.

## IV. *IN FORMA PAUPERIS*

Finally, Defendants request Plaintiff's Complaint be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Defendants assert Plaintiff is "not allowed to proceed *in forma pauperis*" because this matter is Plaintiff's "third frivolous lawsuit." They maintain Plaintiff "should be declared ineligible to file future civil lawsuits or appeals without paying applicable court filing fees."

### A. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915(a), a Court may authorize the commencement of an action without prepayment of fees if an applicant has shown by affidavit that he satisfies the criterion of poverty. Prisoners, however, become responsible for paying the entire amount of their filing fees and costs from the moment they file the complaint. 28 U.S.C. § 1915(b). When an inmate seeks pauper status, the only issue for the Court to determine is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan. *Id.*

Absent imminent danger, the benefit of the installment plan is denied to prisoners who have on three or more prior occasions, while incarcerated, brought an action that was dismissed

on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief could be granted. 28 U.S.C. § 1915(g).

**B.    ANALYSIS**

This Court has already screened Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, resulting in the dismissal of several claims and defendants, and determined that Plaintiff qualifies for *in forma pauperis* status.

Defendants appear to be disagreeing with the Court's determination Plaintiff may proceed *in forma pauperis* by virtue of the fact he has filed "at least" three frivolous lawsuits, including two writs of mandamus in state court in 2018, which were consolidated. While a petition for writ of mandamus is counted toward the three strikes provision of 28 U.S.C. §1915(g), *Banks v. Valaluka*, 2015 WL 7430077, at *2 (N.D. Ohio Nov. 18, 2015), it must have been dismissed as "frivolous, malicious, or failed to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(g). Plaintiff's writ was dismissed without prejudice and there is no indication it was considered frivolous, malicious, or failed to state a claim upon which relief could be granted.

Moreover, in order for the prohibition of *in forma pauperis* status to apply, Plaintiff must have filed frivolous lawsuits on "3 or more *prior* occasions." 28 U.S.C. § 1915(g)(emphasis added). Plaintiff only filed[15] two writs of mandamus and, therefore, 28 U.S.C. § 1915(g) does not apply and the Court DENIES this portion of Defendants' Motion.

**CONCLUSION**

---

[15]    While Defendants summarily assert "Plaintiff has filed before in federal court and lost," they do not direct this Court's attention to a case number or filing date. Even so, simply filing a lawsuit and losing does not automatically count toward the "three strikes" provision.

For the foregoing reasons, the Defendants' Motion to Dismiss (Doc. 12) is GRANTED in part and DENIED in part. Specifically: (1) Part One of the Complaint is dismissed; (2) Part Two of the Complaint will proceed; (3) Defendants' request for qualified immunity is denied; (4) Plaintiff's *Monell* claims against the Defendants will proceed; (5) Defendants' request for a more definite statement is denied; and (6) Defendants' request for Plaintiff to be prohibited from filing actions *in forma pauperis* is denied.

Accordingly, the claims against Pinkney, Budish, and Branch set forth in Part Two of Plaintiff's Complaint, i.e., his conditions of confinement, remain pending.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Court
Chief Judge

Dated: 10/1/19